Timothy Caron, Esq.
Celedon Law
277 Main Street, Suite 305
Marlborough, MA 01752
Tel: (508) 573-3170

Attorney for Petitioner

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GUILHERME BATISTA ARMONDES** ) | |
| ) | Case No. __1:25-cv-10763__ |
| Petitioner, ) | |
| ) | |
| v. ) | **PETITION FOR WRIT OF** |
| ) | **HABEAS CORPUS** |
| Antone Moniz, Superintendent of Plymouth County ) | |
| Correctional Facility; ) | |
| ) | **ORAL ARGUMENT** |
| ) | **REQUESTED** |
| Respondent. ) | |
| ) | |

## INTRODUCTION

1. Guilherme Batista Armondes (hereinafter referred to as "Guilherme," "Mr. Batista Armondes," or "Petitioner") seeks to file this Petition for Writ of Habeas Corpus with the Court.

2. Mr. Batista Armondes is a Brazilian citizen who was paroled into the U.S. on January 29, 2016. Prior to detention, Guilherme was residing at 33 Briarwood Lane Apt 2, Marlborough, MA 01752.

3. Since entering the U.S., Mr. Batista Armondes has established strong ties to the community. Guilherme is married to Vanessa Carvalho Firmino, who is a U.S. citizen, and together they have a 4-year-old U.S. Citizen daughter, and a 3-month-old U.S.

1

Citizen son. Mr. Batista Armondes was detained on March 18, 2025, by Immigration and Customs Enforcement ("ICE").

4. Petitioner's detention violates both the Fourth and Fifth Amendments of the United States Constitution.

5. Accordingly, to vindicate Petitioner's statutory and constitutional regulatory rights, this Court should grant the instant petition for a writ of habeas corpus. Mr. Batista Armondes requests this Court to immediately release him from detention, also enjoining Respondent from re-detaining him unless there are changes in the circumstances that would justify detention.

6. Furthermore, Petitioner also requests this Court to issue a restraining order to prevent Petitioner from being transferred from the state of Massachusetts for the duration of these proceedings.

## JURISDICTION

7. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

8. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), and 28 U.S.C. § 1331 (federal question).

9. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

10. Venue is proper in this District because Respondent is an officer, employee, or agency of the United States, and a substantial part of the events or omissions giving rise to his

claims occurred in this District. Additionally, Petitioner resides in this District and has been initially detained within this District. 28 U.S.C. § 2241.

## PARTIES

11. Petitioner is a Brazilian citizen who was paroled into the U.S. He has been living here for almost 10 years, and he is married to a U.S. Citizen and has U.S. citizen children. He is detained at Plymouth County Correctional Facility, in Plymouth, MA. He is in custody and under the direct control of Respondent and their agents.

12. Respondent, Antone Moniz, is named in his official capacity as the Superintendent of the Plymouth County Correctional Facility. In this capacity, Mr. Moniz has custody over Mr. Batista Armondes because ICE contracts the Plymouth County Correctional Facility to house immigration detainees, including Mr. Batista Armondes.

## STATEMENT OF FACTS

13. Guilherme was born in Inhapim, Minas Gerais, Brazil, on August 18, 2001. He was paroled into the United States on January 29, 2016. Prior to detention, Guilherme was residing at 33 Briarwood Lane Apt 2, Marlborough, MA 01752.

14. Since entering the U.S., Petitioner has established strong ties to the community. Guilherme is married to Vanessa Carvalho Firmino, who is a U.S. citizen, and together they have two young U.S. citizen children.

15. Guilherme was detained on March 18, 2025, by ICE on his way home from dropping off his stepdaughter at school. On that day, Petitioner had his car stopped by ICE for no apparent reason. Petitioner believes that ICE was doing a "stop and identify" operation. One of the officers present confirmed Guilherme's identity, and he was detained and later transferred to Plymouth Detention Center.

3

16. Following his detention, Undersigned Counsel filed a Request for Release with ICE. At present, Undersigned Counsel has not received notice of a decision on this Request for Release.

17. On April 1, 2025, Petitioner suffered a seizure at Plymouth County Correctional Facility. The status of his health is unclear, and Petitioner's family does not know whether he is receiving the appropriate medical treatment.

18. The reason for Petitioner's detention remains unclear. Petitioner is also not tied to any reasonably foreseeable removal. Petitioner's entire family is in Massachusetts, where his legal counsel is also physically present. Maintenance of Petitioner in Massachusetts will allow him to receive appropriate legal representation, and avoid potential illegal measures by the government due to incorrect screenings, as recently reported.[1]

## LEGAL FRAMEWORK

19. Under 8 U.S.C. § 1357(a)(2), ICE officers may conduct warrantless arrests if there is "reason to believe that the alien [] [to be] arrested is [present] in the United States in violation of any [U.S. immigration] law and is likely to escape before a warrant can be obtained for [the] arrest." The "reason to believe" standard requires ICE officers to have probable cause that an individual is in the United States in violation of U.S. immigration laws and probable cause that the individual is likely to escape before a warrant can be obtained for the arrest. *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 885 (N.D. Ill. 2020). The mere presence within the United States in violation of

---

[1] Patrick Smith & Gary Grumbach, *A Man Was Sent to El Salvador Due to 'Administrative Error' Despite Protected Legal Status*, NBC News, Apr. 1, 2025, available at https://www.nbcnews.com/news/us-news/man-was-sent-el-salvador-due-administrative-error-protected-legal-stat-rcna199010.

U.S. immigration law is not, by itself, sufficient to conclude that an alien is likely to escape before a warrant for arrest can be obtained. *Id.*

20. The Supreme Court held in *Zadvydas v. Davis* that civil incarceration is only acceptable "in certain special and narrow non-punitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest." 533 U.S. 678, 690 (2001). The Supreme Court further established the principle that noncitizens in deportation or removal proceedings are just as entitled to due process protections as anyone else. *See Zadvydas*, 533 U.S. at 690 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]" any "person . . . of . . . liberty . . . without due process of law.'"). The First Circuit in *Hernandez-Lara v. Lyons* also relied on the Supreme Court's civil detention cases in its due process analysis, supported by the Supreme Court's reliance on such cases in *Zadvydas*, an immigration detention case. 10 F.4th 19, 36-38 (1st Cir. 2021).

21. Mr. Batista Armondes' detention by DHS violates his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, as well as his rights under the Fourth Amendment of the United States Constitution.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Fifth Amendment Right to Due Process

22. Mr. Armondes' detention by DHS violates his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution. The allegations in the above paragraphs are realleged and incorporated herein. Immigration detention violates due

process if it is not reasonably related to the purpose of ensuring a noncitizen's removal from the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 690-92, 699-700 (2001); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Where removal is not reasonably foreseeable, detention cannot be reasonably related to the purpose of effectuating removal and is unlawful. *See id*. at 699-700.

23. The Supreme Court has also established the principle that noncitizens in deportation or removal proceedings are just as entitled to due process protections as anyone else. *See Zadvydas*, 533 U.S. at 690 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]" any "person . . . of . . . liberty . . . without due process of law.'")

24. Here, there is no reason to justify Petitioner's detention. Petitioner has family here and strong ties to the community. Petitioner cannot be expected to be reasonably removed from the country, and his detention violates the Due Process Clause of the Fifth Amendment. Furthermore, as an alternative to detention, ICE could employ its Intensive Supervision Appearance Program ("ISAP").[2] Government data suggests that this program has been highly successful in preventing flight risk.[3]

---

[2] *ERO Alternatives to Detention Infographic*, U.S. Immigration and Customs Enforcement, Apr. 2021, available at https://www.ice.gov/doclib/detention/atdInfographic.pdf.
[3] *Immigration: Alternatives to Detention (ATD) Programs*, Congressional Research Service, Jul. 8, 2019, available at https://crsreports.congress.gov/product/pdf/R/R45804 (citing GAO study of ISAP program where 99% of those monitored returned to court).

## COUNT TWO

**Violation of Fourth Amendment Right to Protection from Unreasonable Searches and Seizures by the Government**

25. In *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574 (1975), the Supreme Court sought to determine what standard of proof, if any, an immigration officer must apply to stop and detain individuals to investigate their immigration status. *See* 422 U.S. at 880–82, 95 S.Ct. 2574. The Court stated that, just as in the criminal context, an immigration officer "must have a reasonable suspicion" to justify briefly stopping individuals to question them "about their citizenship and immigration status...but any further detention...*must be based on ... probable cause.*" *Id.* at 881–82, 95 S.Ct. 2574 (emphasis added) (citing *Terry v. Ohio,* 392 U.S. 1, at 29, 88 S.Ct. 1868); *see also id.* at 884 ("[T]he Fourth Amendment ...forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.").

26. The First Circuit has required that immigration officers have reasonable suspicion to briefly stop individuals to question them regarding their immigration status and probable cause for any further arrest and detention. *See, e.g., United States v. Mendez-de Jesus,* 85 F.3d 1, 3 (1st Cir.1996) (recognizing that *Brignoni–Ponce* stands for "the principle that an individual may not be [briefly] detained for questioning about citizenship absent reasonable suspicion that the person is an illegal alien"); *Lopez v. Garriga,* 917 F.2d 63, 69 (1st Cir.1990) (noting that detention to inquire about an individual's immigration status is "a seizure and implicate[s] the [F]ourth [A]mendment" (citing *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 216–17, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Terry,* 392

U.S. at 21, 88 S.Ct. 1868 )); *Navia–Duran v. Immigration & Naturalization Serv.,* 568 F.2d 803, 809 n. 7 (1st Cir.1977) (recognizing that an immigration arrest and detention needs to be "supported by probable cause or reasonable suspicion").

27. Statutory authority for warrantless enforcement actions is provided in 8 U.S.C. § 1357. Under 8 U.S.C. § 1357(a)(2), ICE officers may conduct warrantless arrests if there is "reason to believe" that the potential arrestee (1) "is in the United States in violation of [an immigration] law or regulation" and (2) "is likely to escape before a warrant can be obtained for his arrest." *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 885 (N.D. Ill. 2020). The mere presence within the United States in violation of U.S. immigration law is not, by itself, sufficient to conclude that an alien is likely to escape before a warrant for arrest can be obtained. *Id.*

28. Courts have consistently held that the "reason to believe" phrase in § 1357 "must be read in light of constitutional standards, so that 'reason to believe' must be considered the equivalent of probable cause." *Au Yi Lau v. United States Immigration & Nat. Serv.,* 445 F.2d 217, 222 (D.C. Cir. 1971); *see, e.g., Tejeda–Mata v. Immigration & Naturalization Serv.,* 626 F.2d 721, 725 (9th Cir.1980) ("The phrase 'has reason to believe' [in § 1357 ] has been equated with the constitutional requirement of probable cause."); *United States v. Cantu,* 519 F.2d 494, 496 (7th Cir.1975) ("The words [in § 1357 ] of the statute 'reason to believe' are properly taken to signify probable cause."); *see also United States v. Quintana,* 623 F.3d 1237, 1239 (8th Cir.2010) ("Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause.").

29. Petitioner's arrest, which led to his subsequent detention, was unlawful and in violation of his rights under the Fourth Amendment to the United States Constitution. The allegations in the above paragraphs are realleged and incorporated herein. The ICE officers who arrested him stopped his vehicle without a warrant and without probable cause, which led to his arrest and incarceration.

30. In the case of *Nava v. Dep't of Homeland Sec.*, 435 F.Supp.3d 880, 885 (N.D. Ill. 2020), ICE has agreed in the settlement to follow certain procedures regarding warrantless arrests and vehicle stops. The procedures were not adopted in this case, and Petitioner was stopped without reasonable suspicion.

31. For these reasons, Petitioner's arrest and detention violate 8 U.S.C. § 1357(a)(2), as well as the Fourth Amendment to the United States Constitution.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondent to show cause why Petition should not be granted within three days.

(3) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, as well as the Fourth Amendment.

(4) Issue a restraining order preventing Petitioner from being transferred out of the state of Massachusetts for the during of these proceedings.

(5) Issue a Writ of Habeas Corpus ordering Respondent to release Petitioner immediately.

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(7)  Grant any further relief this Court deems just and proper.

Respectfully submitted,

_____
Timothy G. Caron
Counsel for Petitioner

Dated: April 3, 2025

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner Guilherme Batista Armondes, and I submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this third day of April, 2025.

_____
Timothy G. Caron

## CERTIFICATE OF SERVICE

I, Timothy Caron, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: April 3, 2025

_____
Timothy Caron, Esq.