UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GUILHERME BATISTA ARMONDES, <br><br> Petitioner, <br><br> v. <br><br> ANTONE MONIZ, Superintendent of Plymouth County Correctional Facility, <br><br> Respondent. | Civil Action No. 1:25-cv-10763-DJC |

**RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondent Antone Moniz, by and through his attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Petitioner Guilherme Batista Armondes' ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). Doc. No. 1. Respondent responds to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[1]

## INTRODUCTION

Petitioner's arrest and detention by U.S. Immigration and Customs Enforcement ("ICE") is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution. While Petitioner claims that his arrest occurred without a warrant and that his detention is unjustified, ICE, after issuance of a warrant, targeted Petitioner for arrest due to his criminal record which includes 2021 convictions for two counts of Possession to Distribute

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Class A Drugs.  *See* Declaration of ICE Enforcement and Removal Assistant Field Office Director ("AFOD"), Keith Chan, ¶ 10 ("Chan Decl.") attached as Exhibit A; *see also*, Form I-200 Warrant, attached as Exhibit B.

Petitioner's detention is mandated by 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) while he seeks protection from removal after he was issued an expedited order of removal from the United States. ("Any alien subject to the procedures under this clause *shall be detained* pending a final determination of a credible fear of persecution and, if found not to have such a fear, until removal.") (emphasis added); *Jennings v. Rodriguez,* 583 U.S. 281, 302 (2018) ("[Section] 1225(b)(1) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin.") (emphasis added).

The Supreme Court has made clear that the detention of applicants for admission, such as Petitioner, is constitutional and such aliens are entitled only to the process provided by statute which Petitioner has received.  *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*"); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020).  As such, this Court must deny his Petition and decline to order his release.

## BACKGROUND

### A.  Legal Background for Aliens Seeking Admission to the United States.

In exercising its plenary power over immigration, Congress delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens."  6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5).  Relevant here, aliens seeking admission to the United States at ports of entry are subject to inspection by a U.S. Customs and Border Protection ("CBP") officer and carry the burden of demonstrating their admissibility

2

into the United States.  *See* 8 U.S.C. § 1225(a)(3); 8 C.F.R. § 235.1(f).  After arriving at a port of entry, CBP officers inspect each alien requesting admission under 8 U.S.C. § 1225.  The officer will determine if an inadmissibility ground under 8 U.S.C. § 1182 is applicable.  The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures).  An alien who is seeking admission is known as "an applicant for admission." 8 U.S.C. § 1225(a)(1).

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline[] rules and procedures . . .  to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report).  8 U.S.C. § 1225 provides that, if an immigration officer determines that an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States without further hearing ...."  8 U.S.C. § 1225(b)(1)(A)(i).

If, however, the alien indicates an intention to apply for asylum or expresses a fear of persecution or torture, the expedited removal order is held in abeyance and an asylum officer from U.S. Citizenship and Immigration Services ("USCIS") must determine whether the alien has a credible fear of return.  *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4).  If an asylum officer makes a positive finding of credible fear, the individual is placed into removal proceedings in Immigration Court to pursue asylum under 8 U.S.C. § 1229a.  If the asylum officer makes a negative fear determination, the applicant has an opportunity to have such

determination reviewed by an immigration judge ("IJ").  8 U.S.C. 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42. If the IJ reverses and makes a positive credible fear determination, the IJ must vacate the expedited removal order.  *See* 8 C.F.R. § 1208.30(g)(2)(iv)(B).  At that point, removal proceedings in Immigration Court commence.  *Id.*

If the IJ affirms the asylum officer's negative fear determination, the case is remanded to ICE for execution of the expedited removal order, and there is no right to appeal the IJ's decision to the Board of Immigration Appeals ("BIA").  8 C.F.R. § 1208.30(g)(2)(iv)(A).  Courts of appeals also lack jurisdiction to directly review expedited removal orders and credible fear determinations.  8 U.S.C. § 1252(a)(2)(A).  The alien "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removal." 8 U.S.C. 1225(b)(1)(B)(iii)(IV).[2]

As explained by the Supreme Court, "[a]n alien subject to expedited removal thus has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear." *Thuraissigiam*, 591 U.S. at 110.  Such individual, however, "is not entitled to immediate release" regardless of whether their asylum claim is reviewed fully or in an expedited manner.  *Id.* at 111.  The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of  proceedings.  *Jennings,* 583 U.S. at 302 ("[Section] 1225(b)(1) . . . mandate[s] detention of aliens *throughout the completion of applicable*

---

[2] An IJ "may not" conduct a bond hearing to determine whether an applicant for admission should be released into the United States during removal proceedings. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act.")

*proceedings* and not just until the moment those proceedings begin.") (emphasis added).

While an applicant for admission is not entitled to release or a bond hearing by statute, CBP and ICE have *discretion* to parole applicants for admission from custody. *See* 8 U.S.C. § 1182(d)(5). (emphasis added). For those detained under § 1225(b), regulations provide that ICE or CBP may grant parole if the alien is "neither a security risk nor a risk of absconding," and (1) has a serious medical condition; (2) is pregnant; (3) falls within certain categories of juveniles; (4) will be a witness; or (5) if continued detention is otherwise "not in the public interest." 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c).

Parole is not, however, regarded as an "admission" of the alien. 8 U.S.C. § 1182(d)(5)(A). When the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission into the United States." *Id.*

## B. Petitioner's Immigration and Criminal History.

Petitioner is a native and citizen of Brazil. *See* Chan Decl., ¶ 7. On January 29, 2016, Petitioner, then a minor, applied for admission at the Paso del Norte Port of Entry in El Paso, Texas with his mother and sister. *Id.*, ¶ 8. CBP found Petitioner and his family members inadmissible to the United States and therefore processed them for expedited removal per 8 U.S.C. § 1225(b)(1). *Id.* Petitioner's mother indicated a fear of return to Brazil and therefore CBP did not execute the expedited removal order. *Id.* Instead, CBP exercised its discretion to parole Petitioner and his family members from custody. *Id.*

On or about December 6, 2019, Petitioner was charged with two counts of Possession with Intent to Distribute Class A drugs. *Id.*, ¶ 15. Thereafter, on March 15, 2021, Petitioner was convicted for the two counts of Possession with Intent to Distribute Class A drugs in the Milford

District Court.  *Id.*

Because of his criminal record and his lack of admission to the United States, on March 18, 2025, ICE targeted and arrested Petitioner.  *Id.,* ¶ 10; Exh. B, Form I-200, Warrant for Arrest of Alien.  Post-arrest, ICE referred Petitioner's case to USCIS to conduct his statutorily required credible fear interview.  *Id.*, ¶ 11.  USCIS conducted such interview on April 4, 2025 and an asylum officer found that Petitioner did not have a credible fear of removal.  *Id.*, ¶ 12.  Petitioner then asked for an IJ to review USCIS's negative finding.  *Id.*  An IJ is scheduled to review such findings on April 15, 2025.  *Id.*, ¶ 13.  If the IJ affirms the negative credible fear finding, ICE will proceed with Petitioner's removal to Brazil as it conducts removals to Brazil on a regular basis.  *Id.*, ¶ 14.

### C. Petitioner's Habeas Petition.

Petitioner filed his Petition on April 3, 2025 and requests this Court issue a writ of habeas corpus ordering his release from ICE custody.  Doc. No. 1.  Petitioner claims that his arrest and detention are unlawful under the Fourth Amendment because he believes his arrest was conducted without a warrant.  *Id*, ¶¶ 19, 25-31.  He further asserts ICE is violating his rights under the Due Process Clause of the Fifth Amendment because "there is no reason to justify Petitioner's detention." *Id*., ¶¶ 22-24.

## ARGUMENT

Petitioner's arrest was lawful and his detention is mandated by statute and does not offend the Constitution.

### A.    Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1225(b).

Petitioner is an applicant for admission to the United States and ICE is mandated by statute to detain him without access to a bond hearing until his removal from the United States pursuant to his expedited removal order.  Applicants for admission who are inadmissible to the

United States "shall" be ordered removed "without further hearing" unless a claim of fear of persecution is made, in which case he "shall be detained pending a final determination of credible fear;" "if found not to have such a fear, until removed;" and if found to have a credible fear, he "shall be detained for further consideration of the application for asylum." 8 U.S.C. §§ 1225(b)(1)(A)(i), (B)(ii), and (iii)(IV). But, regardless of the level of review of the asylum claim, "the applicant is not entitled to immediate release." *Thuraissigiam*, 591 U.S. at 111.

As explained by the Supreme Court in *Jennings*, these statutory provisions "mandate detention of applicants for admission until proceedings have concluded." 538 U.S. at 297. In declining to find a statutory requirement to conduct bond hearings for such applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention … and neither [statutory provision] says anything whatsoever about bond hearings." *Id. See also Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987) (Explaining that "the detention of the appellants is entirely incident to their attempted entry into the United States and therefore apparent failure to meet the criteria for admission—and so, entirely within the powers conferred by Congress. The petitioners were lawfully detained pursuant to 8 U.S.C. § 1225(b) in the first instance and lawfully held thereafter.").

As such, Petitioner's detention is lawful pursuant to the plain language of the statute and Supreme Court and First Circuit precedent.

### B. Petitioner's Due Process Claim Fails.

Petitioner's undeveloped and unsupported claim to detention in violation of the Fifth Amendment's Due Process Clause is without merit and must be denied. The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Pursuant to that longstanding

doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Thuraissigiam*, 591 U.S. at 139. Applicants for admission lack any constitutional due process rights with respect to admission: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who was an applicant for admission—like Petitioner— "has only those rights regarding admission that Congress has provided by statute" and that "the Due Process Clause provides nothing more." 591 U.S. at 139-40. This "century-old rule" applies even to aliens, such as Petitioner, who arrived at a port of entry and were then "paroled elsewhere in the country for years pending removal…" *Id.*

As such, applicants for admission may be detained without a bond hearing pending admission or removal without running afoul of the Constitution because statute does not provide for bond hearings and only allows for release through the agency's exercise of parole. In *Mezei*,

for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Mezei*, 345 U.S. at 206. Specifically, Mr. Mezei arrived at Ellis Island seeking admission into the United States. *See id.* And even though he had resided in the United States previously, he had since been "permanently excluded from the United States on security grounds." *Id.* at 207. As a result, his home country would not accept him, and he had been detained for more than a year to effectuate his exclusion when he filed his habeas petition. *Id.* at 207–08. The Supreme Court held that Mr. Mezei's detention did not "deprive[ ] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court's decision in *Thuraissigiam* reinforces *Mezei*'s holding. In relevant part, *Thuraissigiam* concerned a due process challenge raised by an alien apprehended 25 yards from the border, which he crossed illegally. 591 U.S. at 139. Like Petitioner, DHS detained and processed him for expedited removal because he lacked valid entry documents. *See id.* at 1967. Mr. Thuraissigiam petitioned for a writ of habeas corpus, asserting a fear of persecution and requested another opportunity to apply for asylum after an asylum officer determined he lacked a credible fear of persecution. *See id.*

In its decision, the Supreme Court delineated the boundaries of due process claims that

can be made by applicants for admission.  Specifically, the Court held that for such aliens stopped at the border, even if paroled thereafter, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *see also Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that Thuraissigiam's due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides.").  In reaching this conclusion, *Thuraissigiam* cited *Mezei* authoritatively, *see* 591 U.S. at 139, because of the basic distinction between aliens already "present" in the United States and those who stand at the "threshold of entry," *Mezei*, 345 U.S. at 208, 214.

Petitioner fails to address the Supreme Court decisions that govern this case and foreclose the relief he seeks: *Mezei* and *Thuraissigiam*.  In seeking release to remedy an alleged due process violation, Petitioner ignores *Mezei*'s holding, reaffirmed in *Thuraissigiam*, that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."  345 U.S. at 212.  Here, 8 U.S.C. § 1225(b) makes plain that applicants for admission "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removal." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  As such, Petitioner is not entitled to release because "an alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.

The U.S. Court of Appeals for the First Circuit also held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah v. Nelson*, 811

F.2d 1, 9 (1st Cir. 1987).  In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.*  The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum."  *Id.*

District courts around the country routinely find no due process violation for the detention of individuals subject to 8 U.S.C. § 1225(b).  For example, in *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647-49 (S.D.N.Y. 2018) the court held that *Mezei* "is directly on point and controls this case" and that "because the immigration statues at issue here do not authorize a bond hearing, *Mezei* dictates that due process does not require one here."  *See also Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145 (D.D.C. 2018) (Explaining that *Mezei* remains "good law, and it dictates that for an alien who has not effected an entry into the United States" the statutory scheme is "due process as far as an alien denied entry is concerned."); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (Finding itself bound to apply *Mezei* in holding that alien's "detention does not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process."); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D. N.M. 2020) ("*Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process rights.  Because [p]etitioner has no statutory right to release or a bond hearing … she has no due-process right to the relief requested."); *Aslanturk v.*

*Hott*, 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (Declining to "ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing since Section 1225(b) does not provide for such hearing.).

Other courts have held similarly, especially after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of applicants for admission. *See e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) (Explaining that "whatever procedure Congress has authorized is sufficient due process. … Accordingly, [p]etitioner's request for immediate release or, in the alternative, for a bond hearing before the Court is denied."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (Denying habeas petition seeking a release or a bond hearing finding that "he does not have a constitutional right to any additional procedure."); *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 126-28 (W.D.N.Y. 2021) (Finding no procedural or substantive due process violation for an alien pursuing withholding-only proceedings based upon Supreme Court's *Thuraissigiam* decision.").

On this legal backdrop, this Court should apply the "century-old rule" reaffirmed in *Thuraissigiam* and conclude that Petitioner's due process rights are coextensive with the rights provided him under statute.  In Section 1225(b) and the INA's related regulatory provisions, Congress has afforded applicants for admission like Petitioner a variety of protections but excluded the possibility of bond hearings or release from detention other than through DHS's exercise of parole.  Consequently, because Petitioner's statutory rights do not extend to a bond hearing or release as a matter of course, the Court must deny his request for release.[3]

---

[3] Despite Petitioner's attestations otherwise, the basic tenets of prolonged detention (and otherwise) noted in *Zadvydas*, 533 U.S. 678, cited as support by Petitioner for his Due Process claim (*see* Doc. No. 1, ¶¶ 22-23), are inapplicable to § 1225(b) detention. *Jennings*, 583 U.S. at 298-300.  This is because detention under § 1225(b) is finite—during credible fear proceedings—and because there are no circumstances under which an alien may be released

**C. Petitioner's Fourth Amendment Claim Fails.**

Petitioner also claims that ICE violated his Fourth Amendment rights by arresting him "without a warrant and without probable cause". Doc. No. 1, ¶ 29. However, as set forth by AFOD Chan, ICE targeted Petitioner for arrest based on his criminal record and ICE served Petitioner with an I-200 Warrant for Arrest of Alien. Chan Decl., ¶ 10; Exh. B. As such, Petitioner's claim fails as ICE's arrest of him was supported by a warrant.

In any event, Petitioner provides no caselaw in support of his claim that an order of release via a habeas petition would be the proper remedy for an alleged Fourth Amendment violation. District courts routinely hold that even assuming a Fourth Amendment violation occurred when a habeas petitioner was arrested by ICE, a habeas action is not the proper means to seek a remedy and release is not an appropriate remedy because an individual's identity and their immigration status cannot be suppressed. *See e.g.*, *H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *5 (M.D. Ga. Sept. 15, 2021) (Explaining that "even if the Court accepted Petitioner's argument that his initial detention was somehow unlawful, he is still not entitled to habeas relief."); *Jorge S. v. Sec'y of Homeland Sec.*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332717, at *4 (D. Minn. Nov. 15, 2018), *report and recommendation adopted*, No. 18-CV-1842 (SRN/HB), 2018 WL 6332507 (D. Minn. Dec. 4, 2018) ("Release from Jorge S.'s *current* detention because his detention *previously* had been unlawful would be a remedy ill-fitted to the specific injury alleged.") (emphasis in original); *Amezcua-Gonzalez v. Lobato*, No. C16-979-RAJ-JPD, 2016 WL 6892934, at *2 (W.D. Wash. Oct. 6, 2016), *report and recommendation adopted sub nom. Amezcua–Gonzalez v. Lobato*, No.

---

from detention under § 1225(b), except where the Secretary, in her discretion, authorizes release through parole. *Id.* In any event, Petitioner has been detained for less than a month, certainly not a prolonged detention as considered in *Zadvydas*.

C16-979-RAJ, 2016 WL 6892547 (W.D. Wash. Nov. 22, 2016) (Finding that "even if petitioner's arrest amounts to an egregious Fourth Amendment violation, he is not entitled to habeas relief, and his petition should be denied.").

Habeas relief is not a proper remedy even assuming a Fourth Amendment violation occurred, which it did not here.  *See also Abel v. United States,* 362 U.S. 217, 230 (1960) ("Statues authorizing administrative arrest to achieve detention pending deportation have the sanction of time."); *Perez-Ramirez v. Norwood,* 322 F. Supp. 3d 1169, 1172 (D. Kan. 2018) (Denying habeas petition and finding no Fourth Amendment violation because "the legality of an arrest of an alien based upon a civil immigration violation is well-established.").

As such, Petitioner's meritless Fourth Amendment claim must be rejected.

## CONCLUSION

For the reasons set forth above, the Petition must be denied.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: April 14, 2025            By:    */s/ Mark Sauter*
MARK SAUTER
MICHAEL SADY
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3100
Email: mark.sauter@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated:  April 14, 2025                    By:     */s/ Mark Sauter*
                                                  Mark Sauter
                                                  Assistant United States Attorney