## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GUILHERME BATISTA ARMONDES,

                Petitioner,

       v.

ANTONE MONIZ, Superintendent of Plymouth
County Correctional Facility,

                Respondent.

Civil Action No. 1:25-cv-10763-DJC

### RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR A
### TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

    Respondent Antone Moniz, by and through his attorney, Leah B. Foley, United States

Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner

Guilherme Batista Armondes' ("Petitioner") Motion for a Temporary Restraining Order and

Preliminary Injunction.

### INTRODUCTION

    Petitioner filed this Motion which asks this Court to stay Petitioner's removal from the

United States for the limited purpose of ensuring that U.S. Immigration and Customs

Enforcement ("ICE") complies with the terms and conditions of the settlement agreement

entered in *Calderon et al. v. Mayorkas*, No. 1:18-cv-10225-MLW (D. Mass).  Doc. No. 15-2 at

4.[1]  In his Motion, Petitioner disputes whether ICE has made the necessary pre-removal

determination under the Settlement Agreement that he poses a threat to public safety and

---

    [1] The *Calderon* litigation concerned a class-wide challenge to ICE's arrest, detention, and removal of class members who have final orders of removal, but due to marriage to U.S. citizens, may be eligible to obtain lawful status upon the approval of multiple immigration applications. *See Calderon* Settlement, *https://www.aclum.org/en/calderon-settlement*.

therefore asks this Court to stay his removal "UNLESS and UNTIL the government meets its obligation(s) under the *Calderon* Settlement Agreement." Doc. No. 15-2 at 4.

Petitioner's Motion must be denied because any dispute as to compliance with the *Calderon* Settlement Agreement must be filed with Judge Wolf as a Motion to Enforce, not a Temporary Restraining Order. *See Calderon* Settlement Agreement, attached as Exhibit A, Section IV(A); *Calderon et al.*, No. 1:18-cv-10225-MLW, Doc. No. 677 (Dismissing case after allowing Joint Motion for Final Approval of Settlement Agreement, but "retain[ing] jurisdiction to enforce the provisions of the Settlement Agreement pursuant to the terms of enforcement set forth in Section VI of the Settlement Agreement for the period provided in Section VII of the Settlement Agreement.").

In any event, ICE has complied with the terms and conditions of the Settlement Agreement by providing the required notice of intent to remove and the basis for such decision to Class Counsel. *See* Exhibit B, Notice of Detained *Calderon* Class Member E-Mails. Finally, this Court lacks jurisdiction to interfere with ICE's removal of Petitioner to his home country per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to … execute removal orders."

## **LEGAL STANDARD**

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. *Jean v. Mass. State Police*, 492 F.3d 24, 26-27 (1st Cir. 2007). Out of these factors, the

likelihood of success on the merits "normally weighs heaviest in the decisional scales." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009). If the court lacks jurisdiction to award the ultimate relief sought, then injunctive relief cannot be awarded as the applicant cannot prove a reasonable likelihood of success on the merits of the claim. *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Petitioner's Immigration History.

As set forth in Respondent's Opposition to Petitioner's Petition for Writ of Habeas Corpus, Petitioner is a native and citizen of Brazil who applied for admission at a Port of Entry in El Paso, Texas in 2016. Doc. No. 12. Petitioner was deemed inadmissible to the United States and therefore U.S. Customs and Border Protection ("CBP") issued an expedited removal order under 8 U.S.C. § 1225(b)(1). CBP paroled Petitioner from its custody and did not execute the expedited removal order as Petitioner and his family members claimed a fear of return to Brazil.

On or about December 6, 2019, Petitioner was charged with two counts of Possession with Intent to Distribute Class A drugs. On March 15, 2021, Petitioner was convicted for the two counts of Possession with Intent to Distribute Class A drugs in the Milford District Court. *Id.* Because of his criminal record and his lack of admission to the United States, on March 18, 2025, ICE targeted and arrested Petitioner. After conducting the statutory and regulatory required review of his claim of fear of return to Brazil, an Immigration Judge on April 16, 2025 determined that Petitioner had not established a significant possibility of eligibility for asylum, withholding of removal, or protection under the Convention against Torture. Doc. No. 13-1. The IJ thereafter returned Petitioner's case to ICE to effectuate his removal from the United

States as directed by 8 U.S.C. § 1225(b)(1)(B)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of a credible fear of persecution and, if found not to have such a fear, until removal."). *Id.*

### B. Petitioner's Habeas Petition.

Petitioner filed his Petition on April 3, 2025 and requested this Court issue a writ of habeas corpus ordering his release from ICE custody. Doc. No. 1. Petitioner claimed that his arrest and detention were unlawful under the Fourth Amendment because he believed his arrest was conducted without a warrant. *Id*, ¶¶ 19, 25-31. He further asserted that ICE is violating his rights under the Due Process Clause of the Fifth Amendment because "there is no reason to justify Petitioner's detention." *Id*., ¶¶ 22-24.

On April 14, 2025, Respondent filed his Opposition to the Petition and argued that ICE's detention of Petitioner was lawful pursuant to statute, regulation, and the Constitution. Doc. No. 12. Petitioner did not respond to Respondent's Opposition. On June 24, Respondent filed a Notice of Intent to Transfer for Purpose of Removal with this Court. Doc. No. 13. The Court provided Respondent until June 26 to file any response or anything else for the Court's consideration. Doc. No. 14. Petitioner did not file a response to Respondent's Opposition and therefore does not contest the arguments made in Respondent's Opposition that Petitioner's detention is lawful pursuant to statute, regulation, and the Constitution.

### C. Petitioner's Motion for Temporary Restraining Order.

On June 26, Petitioner filed his Motion for Temporary Restraining Order. Doc. No. 15. In such Motion, Petitioner argues that he is a *Calderon* class member and thus subject to the terms and conditions of the *Calderon* Settlement Agreement. Doc. No. 15-2. He asserts that *Calderon* Class Counsel, on June 25, 2025, invoked the *Calderon* Settlement Agreement's

Conflict Resolution Procedures. *Id.* at 3. Per Petitioner, these procedures were invoked to challenge whether ICE had made the necessary pre-removal determination that he poses a risk to public safety specifically because Petitioner's 2019 conviction was vacated on May 8, 2025. *Id.* at 3-4. Petitioner therefore requests this Court stay Petitioner's transfer from the district for purpose of removal "UNLESS and UNTIL the government meets its obligation(s) under the *Calderon* Settlement Agreement." *Id.* at 4.

### D. The *Calderon* Settlement Agreement.

Per the Settlement Agreement, ICE must provide Class Counsel with notice of any Enforcement Action taken against a Class Member. *See* Exhibit A, Section V, Reporting. An Enforcement Action is defined as an arrest of a Class Member, ICE's decision to continue detaining an induvial determined to be a Class Member, ICE's command to a Class Member to depart the United States, and ICE's removal of a Class Member. *Id.*, I(E)(1)-(4). On April 22, 2025, Mary Larakers, Senior Litigation Counsel for the U.S. Department of Justice, Office of Immigration Litigation provided notification of the detention of Petitioner to Class Counsel. *See* Exhibit B, Notice Detained Calderon Class Member E-Mails.

In providing notice of its intention to remove a class member, ICE must also provide Class Counsel with a brief description of the why the agency has determined "in good faith and based on the facts in the Noncitizen Class Member's case, that the Noncitizen Class Member poses a threat to public safety or threat to national security." Exhibit A, III(A). This determination by ICE needs to be made, per the Settlement Agreement, by a Deputy Field Office Director ("DFOD"). *Id.*, Section III(C). On April 23, 2025, Senior Litigation Counsel Larakers conveyed to Class Counsel the DFOD's consideration as to the intended removal of Petitioner. Exhibit B. Per the Settlement Agreement, transfer of a Class Member outside of the jurisdiction

of the ICE Boston field office is not permitted unless a DFOD has determined that removal is

appropriate under Section III(C) of the Settlement Agreement. Exhibit A, Section III(G).

      The *Calderon* settlement agreement contains conflict resolution provisions that outline

the steps that must be taken if there is a dispute as to compliance with the conditions of the

agreement. *Id.*, Section VI. Per these Procedures, a *Calderon* class member must comply with

the conflict resolution provisions in Section VI(C) before filing a Motion to Enforce the

settlement agreement with Judge Wolf in District Court. As set forth by Section VI(C), if a

Class Member believes ICE has failed to comply with the terms of the settlement agreement,

such Class Member must "raise the issue via written notice to Defendants as soon as

practicable." *Id.*, VI(C)(1). Defendants and Class Counsel must then meet and confer within

five business days of the written notification if ICE intends to detain and remove the Class

Member. *Id.*, VI(C)(2). If a dispute cannot be resolved within five business days, then the Class

Member "may move to enforce the terms of the Agreement through a Motion to Enforce". *Id.*,

VI(C)(3).

      While simultaneously pursuing relief through the Conflict Resolution Procedures, a Class

Member can also "seek enforcement in Court" if the Class Member believes ICE will remove the

Class Member in less than five business days. *Id.*, VI(D). Per the Settlement Agreement, the

District Court "retain[s] jurisdiction to order appropriate relief, including release, when ruling on

a Motion to Enforce alleging that an individual Named Plaintiff or Class Member has been

detained in violation of Section III after consideration of Defendants' response, if any, to such a

motion." *Id.*, VI(A). *See also Calderon et al.*, No. 1:18-cv-10225-MLW, Doc. No. 677

(Dismissing case, but "retain[ing] jurisdiction to enforce the provisions of the Settlement

6

Agreement pursuant to the terms of enforcement set forth in Section VI of the Settlement

Agreement for the period provided in Section VII of the Settlement Agreement.").

The Settlement Agreement also makes clear that while a Class Member retains the right

to challenge detention or removal through the filing of a writ of habeas corpus, "any claim that a

Noncitizen Class Member's arrest, detention, or removal unlawfully interferes with their rights to

pursue lawful status by way of their marriage to a U.S. citizen spouse … is limited to

enforcement of the terms of this Agreement."  Exh. A, Section IX(J).

On the evening of June 25, 2025, Class Counsel invoked the *Calderon* Settlement

Agreement's conflict resolution procedures on behalf of Petitioner through written notice to

government counsel.  Exhibit B.  Class Counsel acknowledged receipt of the April 23, 2025

email regarding the intended removal of Petitioner and ICE's determination by a DFOD that

Petitioner poses a threat to public safety, but averred that there had "been material changes to the

facts since that determination, including the vacatur of [Petitioner's] December 5, 2019

conviction on May 8, 2025."  *Id.*  Class Counsel raised concern that an ICE DFOD had not made

a subsequent determination that Petitioner poses a threat to public safety "based on the complete

factual record, which has changed materially" with the vacatur of the conviction since ICE's

prior determination in support of removal made on April 23, 2025.  *Id.*

On June 27, 2025, Senior Litigation Counsel Larakers responded to Class Counsel.  *Id.*

Ms. Larakers noted that Petitioner, or Class Counsel on his behalf, could have raised concerns or

objections as to ICE's determination to remove Petitioner based on his conviction being vacated

much earlier than June 25, 2025 in that the conviction was vacated in early May and ICE was on

record of its intent to remove Petitioner at that time.  *Id.*  Ms. Larakers also noted that

Petitioner's filing of the Motion for a Temporary Restraining Order with this Court is improper

under the *Calderon* settlement agreement. *Id.* Finally, while disputing that any violation of the

Settlement Agreement had occurred, Ms. Larakers advised Class Counsel that ICE had agreed to

conduct a new consideration of Petitioner's case based on the information he had presented to

ICE in his request for a stay of removal, including the vacatur of his conviction. *Id.*

On June 30, 2025, Ms. Larakers conveyed to Class Counsel and Petitioner's attorney of

record in this matter ICE's DFOD's determination that Petitioner poses a threat to public safety

and that it intends to effectuate his order of removal from the United States. *Id.* Specifically,

ICE explained its determination as follows:

> *The Deputy Field Office Director (DFOD) has fully considered Mr. Guilherme BATISTA*
>
> *Armondes, .... immigration and criminal histories and has also considered the I-130 visa petition*
>
> *filed by his USC spouse, and his eligibility to file a Form I-601A and an I-212 waiver. The*
>
> *DFOD has further considered the reasons for the Provisional Unlawful Presence Waiver before*
>
> *deciding to effectuate BATISTA's removal order. Specifically, the DFOD has considered*
>
> *BATISTA's criminal history for the following:*
>
> - *On December 5, 2019, the Milford Police Department, MA, arrested BATISTA for the*
>   *offenses of possession to distribute Class A drug, to wit: morphine; possession to*
>   *distribute Class A drug, to wit: oxycodone; unlicensed operation of a motor vehicle;*
>   *failure to stop for police; negligent operation of a motor vehicle; and speeding. The*
>   *arrest report indicates that BATISTA was driving 54 mph in a 30 mph*
>   *zone. Additionally, Milford police officers seized approximately 50-60 unidentified pills*
>   *during this arrest, which based on the officer's training and experience, were consistent*
>   *with packaging used in the distribution of narcotics. The pills were inventoried by the*
>   *Milford police officers and determined to be 4 Morphine Sulfate 15MG (AGB15), 1*

8

*Oxycodone 10MG (OP10), and 54 Oxycodone 5MG (K18) pills. The arrest report also indicated that during questioning, BATISTA stated he was en route to his mother's house on Jefferson Street.  Jefferson Street is known to the Milford Police Department for narcotics use and sales. Upon questioning by police, BATISTA could not provide a plausible explanation as to why the pills were in his car.  On March 15, 2021, in the Milford District Court, MA, BATISTA was convicted of these charges and sentenced to 1-year and 6-months supervised probation.  On May 8, 2025, BATISTA's motion to vacate his plea was granted.  The motion was based on a procedural defect and was unrelated to the underlying facts of his arrest.  The charges are now pending.*

- *On October 5, 2020, the Marlborough District Court, MA, arraigned BATISTA for the offense of assault and battery on a family/household member.  The charges were dismissed.*

- *On August 4, 2022, the Milford Police Department, MA, arrested BATISTA for the offenses of operating a motor vehicle with license suspended and failure to drive in right lane. The arrest report indicates that BATISTA was driving at a high rate of speed and sparks were observed coming from the bottom of his vehicle.  On November 3, 2022, the Milford District Court, MA, amended these charges against BATISTA to a civil penalty and imposed a $100 fine.*

*Id.*

## <u>ARGUMENT</u>

Petitioner's Motion should be denied because any dispute as to ICE's compliance with the *Calderon* Settlement Agreement must be presented through a Motion to Enforce filed with Judge Wolf, not through a motion for injunctive relief filed with this Court.  In any event, ICE

has complied with its obligations under the Settlement Agreement and therefore Petitioner's motion is moot and there is no dispute that needs further consideration or review by the District Court.  Finally, this Court lacks jurisdiction to interfere with ICE's removal of Petitioner to his home country per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to … execute removal orders."  *Compere*, 368 F. Supp. 3d 164, 171 (D. Mass. 2019).

As explained above, the *Calderon* Settlement Agreement directs that Class Counsel and counsel for the government meet and confer as to any dispute regarding compliance with the Settlement Agreement.  Exh. A, Section VI.  If that meet and confer is unsuccessful, or in the event ICE's removal of an individual is imminent, then a Class Member can bring a Motion to Enforce before Judge Wolf.  *Id.*  Judge Wolf "retain[s] jurisdiction to order appropriate relief, including release, when ruling on a Motion to Enforce alleging an individual Named Plaintiff or Class Member has been detained in violation of Section III after consideration of Defendants' response, if any, to such a motion."  *Id.*, VI(A); *See also Calderon et al.*, No. 1:18-cv-10225-MLW, Doc. No. 677 (Dismissing case, but "retain[ing] jurisdiction to enforce the provisions of the Settlement Agreement pursuant to the terms of enforcement set forth in Section VI of the Settlement Agreement for the period provided in Section VII of the Settlement Agreement.").

The Settlement Agreement is clear that while a Class Member can contest detention through the filing of a habeas petition, any claim raised by a Class Member that detention and removal violates his "rights to pursue lawful status by way of their marriage to a U.S. citizen spouse … is limited to the enforcement of the terms of this Agreement."  *Id.*, IX(J).  In other words, any dispute as to whether ICE's detention and removal of a Class Member violates the Settlement Agreement must be brought as a Moton to Enforce after engaging in the conflict resolution procedures.

In this Motion, Petitioner asks this Court to enjoin removal because he challenges whether ICE has made the required pre-removal determination that Petitioner poses a public safety threat. Doc. No. 15-2 at 4. Petitioner, however, to present such a challenge, must file a Motion to Enforce with Judge Wolf, not a motion for injunctive relief with this Court. As such, this Court should deny the Motion as improperly filed.

Additionally, Petitioner's Motion should be denied because the relief requested in the Motion – a stay of removal until "the government meets its obligation(s) under the *Calderon* Settlement Agreement" – has been achieved. As explained above, ICE, through Senior Litigation Counsel Larakers, met its obligations under the Settlement Agreement in April 2025 by providing notice to Class Counsel of ICE's detention of Petitioner and ICE's determination by a DFOD to effectuate Petitioner's removal from the United States after determining that he poses a threat to public safety. *See* Exhibit B. If Petitioner or Class Counsel objected to such determination, especially in light of Petitioner's May 8, 2025 vacatur of his criminal convictions, such objections should have raised through the Settlement Agreement's conflict resolution provisions "as soon as practicable," but much earlier than June 25, 2025 as Petitioner and Class Counsel were aware that ICE intended to remove Petitioner from the United States as such notice was provided on April 23, 2025 by Ms. Larakers.

In any event, once the conflict resolution procedures were invoked, ICE agreed to review information submitted by Petitioner and Class Counsel and to conduct a new determination as to whether Petitioner poses a threat to public safety as set forth in the Settlement Agreement. *See* Exhibit B. On June 30, ICE, through Ms. Larakers, conveyed its determination to Class Counsel and Petitioner's attorney of record in this matter that Petitioner did in fact constitute a threat to public safety and therefore ICE would proceed with Petitioner's removal. *Id.*

ICE acknowledged the recent vacatur of Petitioner's 2019 conviction, but noted that the vacatur was based on a procedural defect and was unrelated to the underlying facts of his arrest. *Id.* The underlying charges are pending, and the facts alleged in the police report, per ICE, indicate that Petitioner was driving over the speed limit and had 50-60 pills in his possession, many of which were determined to be Oxycodone pills. *Id.* ICE also noted that Petitioner was arrested in 2020 for the offense of assault and battery on a family/household member and also arrested in 2022 and charged with operating a motor vehicle with license suspended. *Id.* With the provision of this notice and determination to Class Counsel, ICE again met its obligations under the *Calderon* Settlement Agreement, and as such, this Motion seeking to ensure such compliance, while improperly filed with this Court, should nonetheless be denied as moot.[2]

Finally, as another basis to deny this Motion, this Court lacks jurisdiction to enter a stay of removal pursuant to 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to … execute removal orders." Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL

---

[2] For this reason, conversion of this Motion to a Motion to Enforce and transfer of the Motion to Judge Wolf is unwarranted. If Petitioner seeks to contest removal based upon compliance with the Settlement Agreement, he must file a Motion to Enforce with Judge Wolf in the first instance.

1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf't,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *3 (D. Mass. Oct. 1, 2018) (same); *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

## **CONCLUSION**

For the reasons set forth above, the Motion for a Temporary Restraining Order or Preliminary Injunction must be denied.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: June 30, 2025                    By:     */s/ Mark Sauter*
                                                MARK SAUTER
                                                Assistant United States Attorney
                                                United States Attorney's Office
                                                1 Courthouse Way, Suite 9200
                                                Boston, MA 02210
                                                Tel.: 617-748-3100
                                                Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  June 30, 2025                   By:     */s/ Mark Sauter*
                                                Mark Sauter
                                                Assistant United States Attorney