UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GUILHERME BATISTA ARMONDES**<br><br>   Petitioner,<br><br>v.<br><br>Antone Moniz, Superintendent of Plymouth County Correctional Facility;<br><br>   Respondent. | Case No.   1:25-cv-10763 |

### PETITIONER'S REPLY TO RESPONSE

  Petitioner, Guilherme Batista Armondes (hereinafter referred to as "Guilherme" or "Petitioner"), respectfully replies to the Opposition re Motion for Temporary Restraining Order and Preliminary Injunction filed by Respondent on June 30, 2025. Doc. No. 17.

  Petitioner first acknowledges that disputes as to compliance with the *Calderon* Settlement Agreement should be filed with Judge Wolf. Doc. No. 17 (citing *Calderon* Settlement Agreement, § VI; *Calderon et al.*, No. 1:18-cv-10225-MLW, Doc. No. 677).

I.  **ISSUES RAISED IN THE PRESENT CASE BEYOND *CALDERON***

  Guilherme was paroled into the United States on January 29, 2016. Doc. No. 1, ¶ 13. Upon his entry, Petitioner's disposition was "Expedited Removal with Credible Fear." *See* Exhibit A, Copy of Petitioner's I-213. However, no Credible Fear Interview was conducted with Guilherme for approximately nine years – during which time he established strong ties to the community, married a U.S. citizen, and became a father to two young U.S. citizen children. *See* Exhibit B, Copy of Petitioner's Record of Determination/Credible Fear Worksheet. The Interview and

1

Negative Credible Fear Determination only occurred on or about April 2, 2025 – shortly after Petitioner's detention by ICE in a vehicle stop on March 18, 2025. *Id.*; *see also* Doc. No. 1, ¶ 3.

These circumstances raise serious concerns as to the motive behind ICE's detention of Guilherme. At present, the record contains no evidence indicating why Guilherme's Credible Fear Interview was not conducted for approximately nine years after his entry into the U.S, and was only done so upon his detention several months ago.

The Supreme Court's most explicit invocations of constitutional good faith and bad faith have involved law enforcement officers and, to a lesser extent, other executive branch officials. David E. Pozen, *Constitutional Bad Faith*, 129 HARV. L. REV., 885, 898 (2016). For instance, the Supreme Court previously established that federal judges may enjoin pending prosecutions undertaken by state officials, in bad faith, with the intent to harass the defendant and discourage her from exercising her federal constitutional rights. *Id.* at 900. One particular type of constitutional bad faith that courts have been willing to tackle involves "facially neutral government actions that are in fact based on illegitimate motives or purposes." *Id*. at 920.

Bad faith in the constitutional context does not necessarily require a showing of dishonesty, disloyalty, or the like. *Id.* at 928. In some instances, "unreasonable or inequitable conduct may suffice." *Id.*

Petitioner urges the District Court for the District of Massachusetts to not dismiss this matter in the interest of justice. Guilherme intends to file an Amended Habeas Petition on account of the constitutional questions raised by his delayed Credible Fear Interview.

The public record indicates that the Trump Administration is eager to deport the estimated 11 million "illegal immigrants" residing in the United States as soon as possible.[1,2] In order to do so, it is willing to engage in activities that may violate federal law and the U.S. Constitution.[3,4,5,6]

Placed in the context of the Trump Administration's extensive immigration enforcement activities, it is evident that Petitioner's detention and delayed Credible Fear Interview were part of a broader plan to deport as many aliens as possible – even if such conduct may violate constitutional law.

---

[1] "The Trump administration is attempting to amass a larger force of law-enforcement officials to help carry out deportations by granting agents across the federal government the same powers as an immigration officer, according to an internal memo." Michelle Hackman and Sadie Gurman, *Trump Gives Gun, Drug Agents Deportation Power*, THE WALL STREET JOURNAL (Jan. 22, 2025), https://www.wsj.com/politics/policy/trump-gives-gun-drug-agents-deportation-power-a62903b4.

[2] "Trump's immigration czar is pushing for more. 'That's what we're looking at now. We're looking at ways to create more efficiency to do more,' Tom Homan told reporters outside the White House on Feb. 6." Aline Barros, *Trump administration moves quickly with mass deportation plans*, VOICE OF AMERICA (Feb. 14, 2025), https://www.voanews.com/a/trump-administration-moves-quickly-with-mass-deportation-plans/7975499.html.

[3] "[R]eviewing federal grants to nonprofits helping undocumented/removable people, and freezing funding pending review (§ 19)[presently being challenged in Amica Center for Immigrant Rights v. U.S. Department of Justice (DOJ) (D.D.C), which argues that the decision to cut off funding for legal help desks and orientation programs assisting noncitizens facing deportation violates the First Amendment, the Appropriations Clause, and the APA.]" *The Trump Administration's Early 2025 Changes to Immigration Law*, NEW YORK CITY BAR (Feb. 13, 2025), https://www.nycbar.org/reports/the-trump-administrations-early-2025-changes-to-immigration-law/.

[4] "The January 23, 2025 Guidance Regarding How to Exercise Enforcement Discretion memorandum by DHS Acting Secretary Huffman provides further authority and guidance regarding the expansion of expedited removal, including encouraging ICE to seek the termination of INA § 240 (8 U.S.C. § 1229a) removal proceedings in order to effectuate INA § 235 (8 U.S.C. § 1225) expedited removal instead." *Id.*

[5] "The recent arrest data from Ice does not say where the arrests took place, or how many people the federal agents arrested had prior convictions, data points necessary to understand whether the administration is actually arresting the so-called worst first… In late January, administration officials pressured Ice to significantly ramp up the number of arrests the agency is making, according to reporting from the Washington Post. And the Guardian US reported that the agency is manipulating Google search results to surface years-old reports about raids, in an apparent attempt to create the appearance of arrests happening with greater frequency." Will Craft, *Misleading Ice data 'laying groundwork' for mass deportations, advocates say*, THE GUARDIAN (Feb. 12, 2025), https://www.theguardian.com/us-news/2025/feb/12/trump-ice-deportation-data.

[6] The Trump administration has directed Immigration and Customs Enforcement (ICE) to meet daily arrest quotas of 1,200 to 1,500 individuals as part of its mass deportation strategy…Experts warn that such quotas could overwhelm ICE detention facilities and result in due process violations as individuals are detained without adequate legal review… Additionally, Acting Homeland Security Secretary Benjamine Huffman has authorized ICE agents to terminate ongoing removal proceedings or active parole statuses and apply expedited removal where deemed necessary." Nicci Mattey, *Legislative Bulletin*, NATIONAL IMMIGRATION FORUM (Jan. 31, 2025), https://immigrationforum.org/article/legislative-bulletin-friday-january-31-2025/.

## II. PENDING CONFIRMATION THAT THE GOVERNMENT HAS FULLY COMPLIED UNDER *CALDERON*

On June 30, 2025, ICE conveyed its determination to Class Counsel and Petitioner's attorney of record in this matter that Petitioner did in fact constitute a threat to public safety and therefore ICE would proceed with Petitioner's removal. Doc. No. 17.

However, questions remain as to whether the government's determination was within the realm of good-faith discretion, and therefore fully in satisfaction of its obligations under *Calderon*.

On the afternoon of June 30, 2025, Attorney Jonathan A. Cox ("Attorney Cox") messaged Mary L. Larakers ("Attorney Larakers") regarding ICE's most recent determination. *See* Exhibit C, Copy of Email Correspondence. Specifically, Attorney Cox noted that Attorney Larakers' prior email did not indicate whether the DFOD determination encompassed all of the materials that Petitioner had filed in support of his Renewed Request for Release on May 16, 2025, including the provided letters of support. *Id*. Therefore, Attorney Cox sought to clarify what was included in the record under consideration as part of the new DFOD review. *Id.* As of this writing, Attorney Larakers has not provided a response.

## CONCLUSION

Petitioner respectfully requests that the Court consider this reply to the response filed by Respondent.

Respectfully submitted,

*Timothy Caron*
_____
Timothy G. Caron
*Counsel for Petitioner*

Dated: July 1, 2025

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner Guilherme Batista Armondes, and I submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing document are true and correct to the best of my knowledge.

Dated this first day of July 2025.

*Timothy Caron*
Timothy G. Caron

**CERTIFICATE OF SERVICE**

    I, Timothy Caron, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: July 1, 2025

*Timothy Caron*
Timothy Caron, Esq.